# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **TIMOTHY W. McAFEE,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:21CV00033 |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **CLIFTON CAUTHORNE, ET AL.,** ) | Judge James P. Jones |
| ) | |
| Defendants. ) | |

*Richard D. Kennedy*, Kennedy Law Office, Wise, Virginia, for Plaintiff; *Emily K. Stubblefield, Jeremy E. Carroll, and Julian F. Harf*, Guynn, Waddell, Carroll & Lockaby, P.C., Salem, Virginia, for Defendants.

Plaintiff alleges in this action that he was terminated as the attorney for a Virginia municipality in retaliation for his constitutionally protected speech. He asserts a claim against a town council member pursuant to 42 U.S.C. § 1983, along with pendant state-law claims for breach of contract and tortious interference with contract against the town and the council member. The defendants have moved to dismiss for failure to state a claim upon which relief can be granted. For the reasons that follow, I will grant in part and deny in part the Motion to Dismiss. The case will proceed solely as to the § 1983 retaliation claim against the council member.

I.

In his Second Amended Complaint (herein referred to for convenience as the Complaint) the plaintiff alleges the following facts, which must be accepted as true for the purpose of deciding the Motion to Dismiss.

In July of 2018, the plaintiff, Timothy W. McAfee, a Virginia lawyer, entered into an agreement with the Town of Pound (Town), a municipality chartered under the laws of the Commonwealth of Virginia, to serve as the Town attorney for a "specific term of six years."[1]  Pl's Second Am. Compl. ¶ 7, ECF No. 1-2.  McAfee served as the Town attorney for approximately half of that period before the Town Council voted to dismiss him on March 2, 2021.  *Id.* ¶¶ 37, 39.

While serving as the Town attorney, McAfee became involved in a public dispute regarding possible corruption in the Town government.  McAfee alleges that "pursuant to his duties to the Town of Pound," he was often required to correct Stacy Carson, the mayor of the Town, and Clifton Cauthorne, a member of the Town Council, on legal matters and to criticize them "for acting contrary to the best

---

[1] There are few details in the Complaint about the nature of the plaintiff's alleged agreement with the Town. The entire agreement is not set forth in or attached to the Complaint, and it is not specified whether in fact the agreement was written or oral. However, the defendants have not at this point challenged the existence of the agreement or that it provided for a six-year term. I can take judicial notice from the records of this court that lawyer McAfee continued to represent other clients during the period of the agreement and thus I will assume that he was not limited to providing legal services only to the Town.

interests of the Town." *Id.* ¶¶ 11, 17.  Specifically, McAfee claims that in September of 2020, Carson made baseless allegations that the Town clerk had violated the Virginia Freedom of Information Act (FOIA) and encouraged the public to file a lawsuit against the clerk.  As a result of Carson's accusations, a FOIA violation petition was filed against the clerk.  Although that action was dismissed, Cauthorne continued to make false statements to the public concerning the result of the litigation.  McAfee corrected these statements and criticized Cauthorne for subjecting the Town to the potential payment of additional expenses.

McAfee's criticisms coincided with growing public dissatisfaction with Town officials, specifically directed at Carson.  Local media outlets reported on Carson's alleged corrupt behavior in office, and citizens complained about Carson during the public comment segment of Town Council meetings.  Public outcry for Carson's ouster culminated in a petition for her removal from office in December of 2020.  McAfee was identified as a material witness against Carson.  On February 25, 2021, he was deposed as part of the removal action and testified that Carson's actions warranted dismissal.  At some point thereafter, Carson and Cauthorne became aware of McAfee's involvement in the action to remove Carson.  In February of 2021, at the Town Council meeting, Cauthorne proposed that McAfee be terminated as the Town attorney without explaining why.  The issue was ultimately tabled and rescheduled for consideration the first week of March.

Also in February of 2021, a vacancy became available on the Town Council. A majority of the Town Council is required to fill any vacancy within 45 days, according to the Town's charter and state law. McAfee advised the Town Council and Carson that if the remaining members were unable to select a replacement, the issue would have to be submitted to the Circuit Court for resolution. The plaintiff advised Carson specifically that she was not permitted to cast a tie-breaking vote in selecting a replacement member.

On March 2, 2021, at the next meeting of the Town Council, the remaining members were unable to select a replacement. Carson disregarded McAfee's legal advice and cast the deciding vote appointing Susan Downs-Freeman to serve as the replacement member. After Downs-Freeman was appointed, Cauthorne renewed his motion that McAfee be terminated and replaced as Town attorney. Cauthorne "cited as one of his reasons . . . [McAfee's] criticizing the Mayor for her abuse of authority." *Id.* ¶ 39. With a newfound majority, the motion passed, with Cauthorne, Downs-Freeman, and Marley Green voting in favor to terminate McAfee.

McAfee filed this action in the Circuit Court for Wise County, Virginia, naming as defendants the Town, Mayor Stacey Carson, and three members of the Town Council: Clifton Cauthorne, Marley Green, and Susan Downs-Freeman. In the present Complaint, he alleges that he was removed as Town attorney after he criticized Carson and Cauthorne in connection with their positions on Town Council,

in violation of his First Amendment right to free speech.  He further claims that the Town breached the contract by prematurely terminating him, and that Cauthorne interfered with his contract rights by soliciting potential replacement candidates for the Town attorney position.

The defendants removed the action to this court, pursuant to 28 U.S.C. § 1441.[2]  After removal, the plaintiff voluntarily dismissed his claims against Green and Downs-Freeman and the claim against Mayor Carson was dismissed by the court on an earlier Motion to Dismiss by that defendant.  *McAfee v. Cauthorne*, No. 2:21CV00033, 2021 WL 4933273 (W.D. Va. Oct. 22, 2021).  The remaining claims are retaliation against Cauthorne (Counts One and Two)[3], tortious interference against Cauthorne (Count Three), and breach of contract against the Town (Count Four).

The remaining defendants have moved to dismiss all of these Counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The defendants argue that because McAfee was speaking pursuant to his official duties,

---

[2] While neither party contests jurisdiction, the court is satisfied that it has subject-matter jurisdiction over the federal claims, pursuant to 28 U.S.C. § 1331, and that it may exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over the breach-of-contract and tortious-interference claims, as the state and federal claims at issue "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

[3] The plaintiff asserts two counts based on a First Amendment violation: a claim for damages (Count One) and for a declaratory judgment (Count Two).

his speech was not protected by the First Amendment, but even if there was a constitutional violation, they are entitled to qualified and legislative immunity. They contend that a term contract for legal services is unenforceable because clients retain an absolute right to discharge their attorneys, and therefore, there was no breach of the contract, which is also a necessary element of any tortious-interference claim. They further claim that Cauthorne is a party to contract as an agent of the Town, and a party cannot tortiously interfere with their own contract.

The plaintiff responds that his statements were on matters of public concern that occurred outside the scope of his employment when he testified at a deposition. In addition, he contends that legislative immunity does not apply to non-legislative actions, such as personnel decisions, and qualified immunity also does not protect the defendants, as the free speech rights of public employees who are compelled to speak was clearly established in 2021. The plaintiff also argues that a party may recover for breach of contract for legal services, including a term contract, if the decision to terminate the attorney relationship was for an unlawful purpose, such as a violation of the First Amendment.

The defendants have timely responded. The Motion to Dismiss is now ripe for a decision.

II.

Under federal pleading rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In evaluating a complaint, the court accepts all factual allegations as true and views them in the light most favorable to the non-moving party. *Id.* A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must contain more than mere legal conclusions or a recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A. FREE SPEECH RETALIATION CLAIM (COUNT ONE).

I first consider whether McAfee has plausibly alleged a free speech retaliation claim against Cauthorne. The First Amendment protects public employees from termination in retaliation for speaking as citizens on matters of public concern. *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998). However, this right "is not absolute," and courts must balance the employee's interest in exercising free speech with the government's interest as an employer in providing efficient public services. *Id.* To determine whether a public employee has stated a claim for retaliatory

discharge, the court must consider whether: (1) the employee spoke as a citizen on a matter of public concern; (2) the employee's interest in speaking on the issue outweighed the government's interest in providing efficient services; and (3) the employee's speech was a substantial factor in their termination. *Id.* at 277–78.

1. *Private Citizen on a Matter of Public Concern.*

When public employees testify in judicial proceedings, they act outside the scope of their job and are therefore considered private citizens for purposes of the First Amendment. *Lane v. Franks*, 573 U.S. 228, 238–39 (2014). Testifying is considered a "quintessential example of speech as a citizen" because "[a]nyone who testifies in court bears an obligation . . . to tell the truth." *Id.* at 238. Furthermore, "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee — rather than citizen — speech." *Id.* at 240.

I find that McAfee has sufficiently alleged that he spoke as a citizen rather than an employee. Specifically, the Complaint indicates that McAfee was deposed as part of a legal proceeding. McAfee would have borne the same obligation to tell the truth in the deposition as did the plaintiff in *Franks*. And as the Court confirmed in *Franks*, that McAfee may have acquired knowledge of the subject matter upon which he testified — Carson's alleged corruption and abuse of power — during the

performance of his job duties as Town attorney does not convert his testimony into unprotected employee speech.

The defendants argue that all of McAfee's speech was unprotected because, according to his own allegations, his job required him to criticize local officials. Second Am. Compl. ¶ 11, ECF No. 1-2 ("pursuant to his duties to the Town"). Ignoring the carve out for public-employee testimony under *Franks*, they contend that McAfee's speech is nonetheless unprotected because under *Garcetti v. Ceballos*, 547 U.S. 410 (2006), speech made by employees pursuant to their job duties is not considered speech by private citizens on a matter of public concern. *Id.* at 423. It is possible that some of McAfee's criticisms of Carson and Cauthorne were made pursuant to his official position and thus were not protected speech. I do not need to reach that issue, however, because McAfee's deposition testimony is plainly protected and as discussed further below, it is plausible that McAfee's termination was based, at least in part, on that testimony.

2. *Employee and Government Interests.*

When an employee's speech involves matters of public concern to a more substantial degree, a stronger showing of government interest is required to tip the balancing test in the government's favor. *Franks*, 573 U.S. at 242 (citing *Connick v. Myers*, 461 U.S. 138, 150–51 (1983)). In *Franks*, the Supreme Court held that the government failed to assert a compelling interest in limiting an employee's speech

during testimony when there was no evidence that the testimony was false, erroneous, or revealed confidential information. *Id.* Likewise, I find that the Complaint contains sufficient factual allegations that McAfee's interest outweighs that of the Town. McAfee testified on matters of public concern, and there is nothing to suggest that he testified in bad faith or untruthfully. There is also no allegation that he disclosed confidential information.

It is possible that the Town would be able to show a compelling interest because McAfee held a position of confidence. For example, in *McVey*, the Fourth Circuit held that employees who have confidential or policymaking roles enjoy substantially less First Amendment protection than do lower-level employees. 157 F.3d at 278. The employment hierarchy of the Town is not clear at this stage of the proceeding, but presumably, the Town attorney would be a high-level employee involved in confidential policy decisions. But even assuming the Town could prove that its interest outweighs McAfee's on this ground, the defendants have failed to identify the relevant interests with the required specificity in their motion. In *Lane v. Anderson*, the court held that generalized statements referencing disrepute, polarization, and divisiveness were inadequate at the motion to dismiss stage to demonstrate a compelling government interest in limiting speech. 660 F. App'x 185, 192–93 (4th Cir. 2016) (unpublished). The court further noted that such generalized

statements were especially insufficient where the employee's speech raises a matter of significant public concern. *Id.*

As in *Anderson*, the defendants make only vague assertions of disharmony when referencing the Town's interest in limiting McAfee's speech. They allude only to the need for "efficient and effective governmental operations, without disruption" and to "animosity between [plaintiff] and members of Town Council." Defs.' Mem. Supp. Mot. to Dismiss 15, ECF No. 15. While the alleged discord may be true, these general allegations are the same as those rejected by the *Anderson* court. 660 F. App'x at 192–93. Further, McAfee sought to comment on a matter of serious public interest: government corruption. Where a matter of grave public concern is raised, *Anderson* made clear that the government carries a burden of pointing to specific interests that justify limiting the speech of an employee. *Id.* The defendants point to no such specific interests here.

Finally, the defendants rely upon case law interpreting Virginia's legal ethics rules and the nature of legal contracts that recognizes an attorney-client relationship "may be, indeed should be, terminated" in the absence of trust and confidence. *Heinzman v. Fine, Fine, Legum, & Fine*, 234 S.E.2d 282, 285 (Va. 1977). Although the general principles governing legal contracts may justify termination of an attorney, they are not sufficient to show a compelling interest for the purpose of the First Amendment.

### 3. *Substantial Factor in the Termination.*

Finally, to survive a motion to dismiss, a plaintiff need only allege that the protected speech was a substantial factor in the termination. *McVey*, 157 F.3d at 277–78. To ultimately prevail at trial, a plaintiff must prove that "but for the protected expression, the government official would not have taken the alleged retaliatory action." *Tobey v. Jones*, 706 F.3d 379, 390 (4th Cir. 2013) (internal quotation marks, citation, and alterations omitted). At this stage of the proceedings, however, the court may infer causation based on temporal proximity between the protected activity and the adverse action. *Id.* at 390–91. Where the alleged retaliatory action was "*directly* precipitated by [the] constitutionally protected" speech, the causation requirement is clearly met. *Id.*

Viewing all the allegations by McAfee as true, and in the light most favorable to him, the court can infer causation on these facts. McAfee contends that Cauthorne's stated reason for his termination was his criticism of Carson for "her abuse of authority." Second Am. Compl. ¶ 39, ECF No. 1-2. McAfee was deposed on February 25, 2021, where he testified that Carson's actions warranted removal. The plaintiff alleges that his testimony was a source of tension between himself and Cauthorne, and that Cauthorne's attempts to replace him as Town attorney began soon after he became aware of McAfee's involvement in the petition to remove Carson. That same month, at the Town Council meeting, Cauthorne first proposed

terminating McAfee as Town attorney. On March 2, 2021, the Town Council voted to terminate him, less than one week after his deposition. I find that this is sufficient to establish a causal connection necessary to survive a motion to dismiss.

B. QUALIFIED AND LEGISLATIVE IMMUNITY.

The defendants argue that even if McAfee pled sufficient facts to state a claim that his First Amendment rights were violated, the court should nevertheless grant the Motion to Dismiss on the grounds that Cauthorne is protected by legislative and qualified immunity. Neither defense warrants dismissal of the claim at this stage.

First, Cauthorne is not entitled to legislative immunity. "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (internal quotation marks and citation omitted). Legislative immunity protects only legislative actions; executive and administrative actions are not covered. *Alexander v. Holden*, 66 F.3d 62, 65 (4th Cir. 1995). Whether an act is "legislative" turns on the nature of the act, not the motive or intent of the official performing it. *Bogan*, 523 U.S. at 54. Not all actions taken by legislators in their official capacities are legislative; local legislative bodies act in different capacities, including executive and administrative. *Alexander*, 66 F.3d at 65.

Legislative decisions to terminate a particular employee are generally administrative in nature, including when undertaken by vote of a municipal council.

*Id.* at 66; *see also Roberson v. Mullins*, 29 F.3d 132, 134–35 (4th Cir. 1994). While the decision to eliminate an entire position through budget allocation or policy enactment is typically legislative, the decision to terminate a particular employee without removing the position itself is "plainly unrelated to the process of adopting prospective, legislative-type rules." *Alexander*, 66 F.3d at 66 (internal quotation marks, citations, and alterations omitted). Here, Cauthorne's actions were administrative in nature. Cauthorne's vote did not eliminate the position of town attorney pursuant to a new budget or policy. Rather, the Complaint alleges that Cauthorne used his official position to specifically terminate the plaintiff from that position. Accordingly, he cannot invoke the defense of legislative immunity.

Second, Cauthorne is not entitled to qualified immunity, at least at this stage of the proceedings. Government officials performing discretionary functions may only be held liable for civil damages if their conduct violated a clearly established constitutional right. *Washington v. Wilmore*, 407 F.3d 274, 281 (4th Cir. 2005). The right alleged to have been violated must be "clearly established . . . in light of the specific context of the case, not as a broad general proposition." *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 185 (4th Cir. 2018) (internal quotation marks and citations omitted). Ordinarily, qualified immunity is best resolved at the summary judgment stage with the benefit of a complete factual record. *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991). A motion to dismiss on qualified immunity grounds must

be denied when a plaintiff plausibly alleges a violation of a right that was clearly established at the time of the violation. *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012).

As explained above, I find that the plaintiff has alleged a plausible violation of his First Amendment right. The question is whether it was clearly established in March of 2021 that the First Amendment prohibits the termination of a public employee based on deposition testimony where he spoke critically about a local government official. I find that it was. *Lane v. Franks*, 573 U.S. 228 (2014); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

It has been more than fifty years since *Pickering* first recognized that public employees retain their First Amendment right to free speech, including the right to comment as private citizens on matters of public concern. 391 U.S. at 568. More recently, in *Franks*, the Court held that sworn, compelled testimony by a government employee constitutes protected speech by a private citizen, even when that testimony contains information acquired in the course of employment. 573 U.S. at 238–39. Together, these cases placed the defendants' alleged conduct and its constitutional implications beyond debate and were settled law long before the events in question. To be clear, following discovery, the evidence may show that no violation occurred, but where the qualified immunity question and the case itself depend on a determination of what actually happened, dismissal on qualified immunity grounds

at this stage is not appropriate. *See Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995) (denying summary judgment on qualified immunity grounds where there were disputes of material fact).

## C. DECLARATORY JUDGMENT (COUNT TWO).

In addition to monetary damages, McAfee seeks a declaratory judgment proclaiming that his speech is protected under the First Amendment. Whether to grant declaratory relief is within the discretion of the court. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–83 (1995). In exercising this discretion, the court ought generally to entertain a declaratory judgment action when it finds that the declaratory judgment will: (1) "serve a useful purpose in clarifying and settling the legal relations in issue"; and (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (internal quotation marks and citations omitted). Courts must also consider factors such as federalism, efficiency, and comity. *Id.* Typically, a declaratory judgment is appropriate to help resolve a dispute before an injury has occurred in order to determine the rights and obligations of the parties. Here, any attempt to establish the future obligation of the defendants not to retaliate against employees based on protected speech would be highly speculative and likely irrelevant, as McAfee is no longer providing legal services to the Town and he does not assert claims on behalf of other public employees.

Because a declaratory judgment would be inappropriate in this case, I will dismiss Count Two.

### III.

McAfee's Complaint further alleges breach of contract by the Town and tortious interference with contract by Cauthorne. I will first address the breach of contract claim.

#### A. BREACH OF CONTRACT (COUNT FOUR).

Term contracts for legal services are generally unenforceable. *Fuston, Petway & French, LLP v. Water Works Bd.*, No. 1180875, 2021 WL 2678325, at *5 (Ala. June 30, 2021) (unpublished). A client's discharge of an attorney cannot constitute breach of contract for future services because the right to discharge an attorney at any time is an implied term of any contract for legal services. *See Heinzman*, 234 S.E.2d at 286.

The plaintiff cites as support for his contention to the contrary language from *Heinzman* that confirms the general validity of contracts for legal services. Specifically, *Heinzman* noted that "contracts for legal services are valid and when those services have been performed as contemplated in the contract, the attorney is entitled to the fee fixed in the contract." *Heinzman*, 234 S.E.2d at 285. The plaintiff extrapolates from this statement a right to recover for breach of contract.

The plaintiff's broad interpretation of *Heinzman* is incorrect. Nothing in *Heinzman* suggests that an attorney may recover the total sum contracted for in a term contract for attorney services. The language cited by the plaintiff makes clear that an attorney may recover only for "services [that] *have been performed as contemplated* in the contract." *Id.* (emphasis added). Such language merely supports what is well-settled law in Virginia: an attorney, who may be discharged "for any reason or without any reason," *id.* at 286 (internal quotation marks and citation omitted), is permitted to recover "the reasonable value of the services rendered," to the time of discharge, *Campbell Cnty. v. Howard*, 112 S.E. 876, 885 (Va. 1922). McAfee could, of course, recover for any uncompensated services already rendered, but his Complaint contains no such claims.

In sum, the Town could not have breached its contract for future employment with McAfee because that contract implicitly included the inherent right to terminate McAfee at any time. To the extent that the contract purported to limit that right by imposing an obligation to employ McAfee for six years, it is unenforceable. Accordingly, I will grant the defendants' motion as to Count Four.

### B. TORTIOUS INTERFERENCE WITH CONTRACT (COUNT THREE).

Under Virginia law, the elements of tortious interference with contract are: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interferer; (3) intentional interference inducing or causing breach

or termination of the relationship; and (4) resultant damage to the party whose relationship has been disrupted. *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985).

The defendants contend that Cauthorne was an agent of the Town and therefore a party to the contract, and because a party cannot interfere with their own contract, tortious interference is impossible in this case. The plaintiff argues that Cauthorne is not a party to the contract, and that he could therefore have interfered with a valid contract between McAfee and the Town. But the court need not resolve the question of Cauthorne's agency in this matter. For a prima facie showing of tortious interference with contract, Virginia law requires intentional interference with the contract "inducing or causing a breach." *Id.* As previously discussed, the Town did not breach the contract by terminating McAfee. Put simply, Cauthorne could not have induced or caused a breach that did not occur. I therefore will grant the defendants' motion as to Count Three.

IV.

For the reasons stated, it is **ORDERED** as follows:

1. The Motion to Dismiss, ECF No. 14, is GRANTED IN PART and DENIED IN PART. The motion is DENIED as to Count One. The motion is GRANTED as to Counts Two, Three, and Four; and

2. The Clerk is directed to terminate defendant Town of Pound.

        ENTER:   June 13, 2022

        /s/  JAMES P. JONES
        Senior United States District Judge